UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANTOINE JONES,<br><br>　　　　Plaintiff<br><br>　　v.<br><br>STEPHANIE E. YANTA, et al.<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 07-1172 (RJL)<br>)  (ECF)<br>)<br>)<br>)<br>) |

**FEDERAL DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Pursuant to Federal Rules of Civil Procedure 12(b)(1), (5) and (6), Federal Bureau of Investigation Special Agent (SA) Stephanie E. Yanta and Assistant United States Attorneys Rachel Lieber and Jack Geise (collectively "Federal Defendants") respectfully file this motion to dismiss Plaintiff's complaint. Federal Defendants respectfully refer the Court to the accompanying memorandum in support of this motion and proposed order.

Pro se Plaintiff will take note that if he fails to respond to this motion to dismiss, the Court may grant this motion and dismiss his case because of his failure to respond. See Fox v. Strickland, 837 F.2d 507 (D.C. Cir. 1988).

November 2, 2007                    Respectfully submitted,


　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　JEFFREY A. TAYLOR, D.C. BAR # 498610
　　　　　　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　RUDOLPH CONTRERAS, D.C. BAR # 434122
　　　　　　　　　　　　　　　　　　　　Assistant United States Attorney

_____/s/_____
KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C. 20530
(202) 514-7157
(202) 514-8780 (facsimile)

<u>CERTIFICATE OF SERVICE</u>

  I HEREBY CERTIFY that I caused service of the foregoing **Federal Defendants' Motion to Dismiss** to be made by mailing a copy thereof to:

Antoine Jones
DC # 241-912
D.C. Jail
1901 D Street, S.E.
Washington, D.C. 20003


on this 2nd day of November, 2007.

              _____/s/_____
              KENNETH ADEBONOJO
              Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTOINE JONES, | ) |
| | ) |
|       **Plaintiff** | ) |
| | ) |
| | ) Civil Action No. 07-1172 (RJL) |
|       v. | )  (ECF) |
| | ) |
| STEPHANIE E. YANTA, et al. | ) |
| | ) |
|       **Defendants.** | ) |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(5) and (6), Federal Bureau of Investigation Special Agent (SA) Stephanie E. Yanta and Assistant United States Attorneys Rachel Lieber and Jack Geise (collectively "Federal Defendants") respectfully file this motion to dismiss Plaintiff's complaint.

### I.   INTRODUCTION AND SUMMARY

Antoine Jones, Register Number DCDC 241-912,  <u>pro se</u> in this action ("Plaintiff"),  is a pretrial detainee incarcerated at the District of Columbia Jail in Washington, D.C.  On or about June 29, 2007, using a form captioned "Complaint for Violation of Civil Rights...under the Civil Rights Act, 42 U.S.C. §1983," Plaintiff commenced this action alleging constitutional claims against the Federal Defendants.[1]  In addition to $10 million, Plaintiff is seeking relief in the form of "an investigation and [<u>Franks</u>] hearing on the matter of illegal wiretap and misleading and

---

[1]   Also pending before this Court are other civil actions commenced by Plaintiff. They are: <u>Jones v. Kirchner et al.</u>, 07-1063; <u>Jones v. Gikas et al.</u>, 07-1068; <u>Jones v. Lieber et al.</u>, 07-1072; <u>Jones v. Horne et al.</u>, 07-1300.

Deceiving the judge on the text messages affidavit." Although Plaintiff's complaint is against individual defendants only, he does not specifically state that he is suing them in their individual capacities or from whom exactly he seeks the monetary damages.

Specifically, with regard to SA Yanta, Plaintiff alleges that her affidavits in support of applications for text message and voice intercept warrants "mislead, deceived and demonstrated a reckless disregard for the truth." Franks v. Delaware, 438 U.S. 154 (1978). Statement Attached to Pl. Compl. ¶¶1-7. With regard to AUSAs Lieber and Geise, Plaintiff alleges that they "engaged in prosecutorial misconduct by allowing, encouraging and participating...in deceiving the courts, manipulating the facts, and forging false documents, witness testimonies and statements throughout trial." ¶8. Although Plaintiff's complaint is captioned as a 1983 claim, Defendant will also profer arguments for dismissal as a Bivens claim.[2] Federal Defendants move to dismiss Plaintiff's complaint on the grounds that his complaint fails to state a Bivens cause of action. Importantly, the complaint fails to allege sufficient facts to even remotely suggest that SA Yanta made false or misleading statements in her affidavit. Notably, Plaintiff's allegations of impropriety by SA Yanta have twice been rejected by this court. Based on the finding that SA Yanta acted properly, it necessarily follows that AUSAs Lieber and Geise acted properly also. Finally, Plaintiff has failed to procure proper service on SA Yanta.

## II.  FACTUAL BACKGROUND

Plaintiff is a pretrial detainee incarcerated in the District of Columbia Jail. He is charged with one count of conspiracy to distribute and possession with intent to distribute five kilograms

---

[2]  Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

or more of cocaine and fifty grams or more of cocaine base in violation of 21 U.S.C. §846. U.S. v. Antoine Jones, et al., 05-386 (ESH), Docket Entry 384. According to the indictment, from sometime in 2003 through October 24, 2005, Plaintiff was the primary supplier and involved in a conspiracy to acquire, repackage, store, processes, sell and redistributed large quantities of cocaine and cocaine base in the District of Columbia, Maryland and elsewhere. Id.; U.S. v. Antoine Jones, 451 F.Supp.2d 71, 73-74 (D.D.C. 2006). As part of their investigation into Plaintiff's conduct, law enforcement utilized a number of investigative techniques including, surveillance, informants, installation of electronic tracking devices on Plaintiff's vehicle, search warrants issued to electronic communications service providers for text and voice communication used by Plaintiff and an alleged co-conspirator, Lawrence Maynard.

    A.    Text Message Affidavits

In support of an application for search warrants to two electronic service providers for stored text messages sent and/or received by Plaintiff and Maynard, SA Yanta swore an affidavit reflecting information obtained from three confidential sources unknown to each other including two who had made multi-kilogram purchases of cocaine directly from Plaintiff and whose information about pricing, packaging and distribution corroborated one another. U.S. v. Jones, 451 F.Supp.2d 71 at 77 n.5. In addition, SA Yanta's affidavit indicated the extent to which surveillance, searches, debriefing and other investigative techniques had been employed yielding a stop of Maynard while speeding in North Carolina in a vehicle registered to Plaintiff. Id. Maynard and another passenger in the vehicle gave conflicting accounts of their destination and a search of the vehicle revealed a hidden compartment containing $67,155.00 in cash. Id. The occupants of the vehicle each had $5,000 in cash on their person.

Although the technology to track the contents of text messages became available to law enforcement within weeks of SA Yanta's affidavit, it revealed that text messages accounted for 90% of all activations on the targeted phones versus 50% prior to the affidavit. Id. This formed the basis of a reasonable conclusion that Plaintiff was attempting to conceal illicit activities. Id. Accordingly, Magistrate Judge Kay issued the warrants upon a finding of probable cause. In addition to the above, SA Yanta's August 18, 2005 affidavit referenced 180 text messages obtained pursuant to the August 10, 2005 affidavit many of which were suspicious. Id. at n. 6.

The Court found that SA Yanta's affidavit clearly established probable cause to believe Plaintiff was operating a conspiracy to distribute narcotics based on the confidential informants and the Maynard stop alone and declined to review the reasonableness of SA Yanta's beliefs. Id. By the same token, the Court rejected Plaintiff's application for a Franks hearing based on the argument that SA Yanta omitted text messages pertaining to his legitimate nightclub business. Id. at 78-79. This Court noted that Plaintiff's argument was undermined by the fact that informants indicated that Plaintiff was using his nightclub to obscure his illicit activities. Id. at 79. In reiterating that probable cause existed even without the contested portions of the affidavit, the Court noted that Plaintiff was unable to show that SA Yanta's affidavit contained materially false statements or omissions or that such were made with the requisite scienter. Id.

B.  Wiretap Affidavits

SA Yanta also submitted affidavits in support of applications to intercept Plaintiff's telephone calls on September 2, 2005, which Judge Friedman signed the same day and extended on September 30, 2005. The Court found that probable cause existed to intercept Plaintiff's telephone conversations because he had been in contact with individuals that informants had

4

identified as Plaintiff's customers and yet other individuals with drug convictions and histories of drug activity. Id. at 81. Furthermore, the Court found that SA Yanta's affidavit addressed the statutory requirements of necessity and minimization with statements based in facts about the difficulties inherent in investigating a large drug conspiracy that would require a wiretap. Id. at 81-84. Specifically, the Court noted that the affidavit did not contain conclusory statements but rather specific information about Plaintiff's illicit activities and the limitations of conventional investigative techniques.

Recently, Plaintiff's motion for reconsideration of the Court's ruling and rationale set forth above was denied. U.S. v. Jones, 05-Cr-386, Docket 384. As here, Plaintiff attempted to posture his application for reconsideration by referring to testimony given after the Court's first ruling but the Court noted that the renewed application was a "verbatim repetition" of the original motion to suppress. Id. at 3.

### III.  STANDARD OF REVIEW

In resolving a motion to dismiss, pursuant to Rule 12(b)(6), the court must construe the factual allegations in the complaint in the light most favorable to plaintiff, but need not accept the legal conclusions or allegations without factual support in the allegations made. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). The Court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matter of which the court may take judicial notice, and matters of public record. EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).[3] Here, Plaintiff has not properly pled

---

[3] Generally speaking, the Court should not consider matters beyond the pleadings without converting the motion for summary judgment. See Fed. R. Civ. P. 12(b)(6). Nonetheless, there are important exceptions to this general principle. The Court may properly take judicial notice of court records without converting a motion to dismiss into a motion for summary judgment. Baker v. Henderson, 150 F. Supp. 2d 17, 19 n.1 (D.D.C. 2001)("in determining whether a complaint fails to state a claim, the court may. . . take judicial notice of matters of a general public nature, such as court records, without converting the motion to

5

a Bivens claim.  Moreover, Plaintiff has pled no facts that even remotely raise any question about the propriety of SA Yanta's affidavits or facts that raise a question about prosecutorial misconduct on the part of AUSAs Lieber and Giese.

### IV.  ARGUMENT

**A.  Plaintiff Cannot Maintain a 42 U.S.C. 1983 Action Against Federal Defendant**

Plaintiff's complaint is on a form captioned "...Complaint by a Prisoner  Under the Civil Rights Act, 42 U.S.C. §1983," with documents attached.  To the extent he raises claims under §1983 against Federal Defendants, Plaintiff fails to state a claim.  Although Plaintiff seeks relief in the form of $10,000,000, he does not state specifically against which of the named defendants he seeks such damages.  Regardless, because section 1983 does not apply to federal officials acting under federal, rather than state authority, the Circuit's law is clear, Plaintiff fails to state a 1983 claim against Federal Defendants.  Williams v. U.S.A., 396 F.3d 412 (D.C. Cir. 2005) (upholding the lower court's refusal to construe a 1983 claim as a Bivens claim).

**B.  Plaintiff's Claim is Barred by the Heck Rule**

Plaintiff's claim is barred by the rule pronounced in Heck.  Since Plaintiff is challenging the propriety of evidence that the Court has already refused to suppress, he must establish the invalidity of those evidentiary rulings before bringing a constitutional claim against Federal Defendant.  Edwards v. Balisok, 520 U.S. 641, 646 (1997).  Alternatively, the court could grant a stay of this action pending conclusion of Plaintiff's upcoming trial.  Wallace v. Kato, 127 S. Ct. 1091, 1098 (2007).

---

dismiss into one for summary judgment."); Himmelman v. MCI Communications,104 F. Supp. 2d 1, 3 (D.D.C. 2000)("The court may consider [on a motion to dismiss] the allegations of the complaint, documents attached to or specifically referred to in the complaint, and matters of public record.")

In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court held that a prisoner may not bring a civil rights action for money damages alleging unconstitutional conviction or imprisonment unless the conviction had first been reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus. Id. at 486-87. In Edwards v. Balisok, 520 U.S. 641 (1997), the Supreme Court applied Heck to bar a prisoner's civil rights suit challenging an internal prison disciplinary sanction that affected the overall length of confinement, where good time credit had been taken from the inmate, holding that a claim for damages, based on procedural defects in the prison disciplinary hearing, necessarily implied the invalidity of the punishment imposed and was therefore not cognizable under § 1983. Id. at 647 (reiterating Heck's holding as applicable to other harms caused by actions whose unlawfulness could render a conviction or sentence invalid). In Williams v. Hill, this Court extended the holding of these cases to Bivens actions brought against federal officials. 74 F.3d 1339, 1340 (D.C. Cir.1996).

Here, the Heck rule mandates that Plaintiff invalidate this Court's rulings on the motion to suppress, which invariably upheld Federal Defendants' conduct, before he can bring a claim for money damages for alleged constitutional violations. That Plaintiff's claim is barred by Heck is not affected by the fact that there is currently no conviction or sentence. Kato, 127 S. Ct. 1091 at 1098. Here, not only is there an indictment, this Court has denied Plaintiff's suppression motions, which are based on the same arguments that undergird this action. Therefore, Heck bars this action because it is a collateral attack on this Court's rulings and much of the evidence upon which Plaintiff's criminal prosecution is based. A recovery in this action necessarily impugns this Court's rulings on the propriety of the Federal Defendants' conduct.

### C. Collateral Estoppel

Collateral estoppel precludes a plaintiff from re-litigating an issue of fact or law that was previously decided in prior litigation involving the same party. Collateral estoppel may be asserted in a civil action to preclude re-litigation of an issue of fact or law that was resolved in a prior criminal proceeding. Allen v. McCurry, 449 U.S. 90 (1980). The federal courts in the District of Columbia apply a three-part standard for collateral estoppel: (1) the same issue being raised must have been contested by the parties and submitted for judicial determination in the prior case; (2) the issue must have been actually and necessarily determined by a court of competent jurisdiction in the prior case; and (3) preclusion in the second case must not work a basic unfairness to the party bound by the first determination. Rogers v. Johnson-Norman, 466 F. Supp.2d 162, 169 (D.D.C. 2006)(quoting Yamaha Corp. of Am. v. United States, 961 F.2d 245, 254 (D.C.Cir.1992)).

In this case, Plaintiff Jones is precluded from re-litigating the claims in his complaint because these issues were previously decided in the underlying criminal proceeding. The validity of the affidavits and the warrants was raised by Jones during his criminal trial and the court held that the affidavits provided probable cause and the warrants met all legal requirements. U.S. v. Jones, 451 F.Supp.2d 71, 75. (D.D.C. 2006). These are the exact same issues raised in the Plaintiff's civil complaint. These issues were determined by a court of competent jurisdiction and preclusion in this case will not work a basic unfairness to the party because Jones was already provided a full and fair opportunity to litigate these issues during his criminal trial.

8

### D. Absolute Immunity

Although it does not appear so from his complaint, to the extent that Plaintiff may be attempting to sue the AUSA Defendants personally, they would be protected by absolute immunity. Few areas of the law draw a brighter line than the doctrine of absolute immunity for prosecutors and their actions within the prosecutorial function. Epps v. Howe, 2007 U.S. Dist. 55093 at 6-7 (D.D.C. 2007) (citing Sloan v. HUD, 231 F.3d 10, 19 (D.D.C. Cir. 2000)). When prosecutors act in their roles as advocates, absolute immunity applies. Burns v. Reed, 500 U.S. 478, 486 (1991) (noting that a prosecutor is absolutely immune from liability for presenting false statements in a probable cause hearing); Imbler v. Pachtman, 424 U.S. 409, 427 (1976) (noting that a prosecutor is absolutely immune from liability for using false testimony at trial). Absolute immunity applies even when the plaintiff establishes that the prosecutor acted intentionally, in bad faith, or with malice. Kalina v. Fletcher, 522 U.S. 118 (1997). The rationale for absolute immunity is the need to protect prosecutors from frivolous and unfounded claims and keep them focused on serving the public trust. Imbler, supra, 424 U.S. at 424-28 (affirming dismissal of a complaint on immunity grounds where the prosecutor knowingly used false evidence and suppressed exculpatory evidence).

Under the functional approach, absolute immunity shields adversary functions such as "initiating judicial proceedings, evaluating evidence, and preparing presentations before a grand jury or trial." Buckley, supra, 509 U.S. at 272-73. Here, the AUSA Defendants are entitled to absolute immunity because they were performing their duties in pre grand jury and/or pretrial roles. Buckley, supra. To the extent they were involved, the AUSA Defendants were clearly attempting to gather evidence to support the case to be presented before the grand jury and at

trial.  Therefore, it is undisputable that they were functioning as advocates and absolute immunity should protect them.  Plaintiff's allegation that the AUSA Defendants participated in deceiving the court and thereby engaged in prosecutorial misconduct is contrary to the Court's rulings in the suppression hearings that the Federal Defendants acted properly.  Plaintiff has not pled any facts that refute the fact that the AUSA Defendants were functioning in their roles as advocates when the warrants were sought.  Accordingly, these claims should be dismissed.

### E.  Qualified Immunity

The Federal Defendants are entitled to qualified immunity because, taking Plaintiff's allegations as true, they do not state a constitutional violation and, even if they did, their actions did not violate any clearly established statutory or constitutional rights of which some reasonable persons should have been aware.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  The privilege is "an immunity from suit rather than a mere defense to liability; and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id.  The D.C. Circuit, in Farmer v. Moritsugu, 163 F.3d 610, 613 (D.C. Cir. 1998), explained:

> In short, "[a]n official is ... entitled to summary judgment [on qualified immunity grounds] unless '[t]he contours of the right [were] sufficiently clear that a reasonable official would [have] underst[ood] that what he [was] doing violate[d] that right.' " Harris v. District of Columbia, 932 F.2d 10, 13 (D.C. Cir. 1991) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987), aff'd 922 F.2d 443 (8th Cir. 1990)).

By "provid[ing] government officials with the ability reasonably to anticipate when their conduct may give rise to liability for damages," Anderson, 483 U.S. at 646, the doctrine of

qualified immunity strikes a balance between compensating those injured by official conduct and protecting the Government's basic ability to function.  See Harlow, 457 U.S. at 813-14.  In other words, qualified immunity is designed to mitigate the social costs of exposing government officials to personal liability--costs such as "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service."  Id. at 816; see also Harris, 932 F.2d at 13.  To this end, qualified immunity provides not simply a defense to liability, but also "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

In Hope v. Pelzer, 536 U.S. 730 (2002), the Court found that defendant's conduct in handcuffing plaintiff, a prisoner, to a hitching post, with his arms above his head, shirtless, in the blazing sun, without water or bathroom breaks for seven hours violated clearly established constitutional rights of which defendant should have been aware.  The plaintiff pled sufficient facts to preclude qualified immunity because there was precedent condemning the hitching post practice beyond what was necessary to quell a threat or restore order and there had already been a Department of Justice report condemning the hitching post practice as improper corporal punishment.  536 U.S. at 736-37.  These same facts established that a reasonable person should have been aware that the hitching post practice particularly in the circumstance plaintiff was placed was a violation of his rights.  Id. at 741.

Plaintiff has not pled anything remotely resembling Hope.  This Court has already rejected Plaintiff's contentions that SA Yanta's affidavits were compromised by deliberate

falsehoods. In so doing, the Court denied Plaintiff a <u>Franks</u> hearing. Therefore, Plaintiff cannot state a claim that would entitle him to proceed beyond this point not to mention entitle him to relief.

Assuming arguendo the complaint could be interpreted to sufficiently state that Federal Defendants committed unconstitutional acts, as discussed above, plaintiff failed to articulate how his constitutional rights were clearly established. <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987). Accordingly, even under the facts as alleged in the complaint, Federal Defendants are entitled to qualified immunity, and should be dismissed from this lawsuit.

**E.  Insufficient Service on SA Yanta case**

A court may dismiss a complaint without prejudice for ineffective service of process. <u>See</u> Fed. R. Civ.P. 12(b)(5); <u>Simpkins v. District of Columbia</u>, 108 F.3d 366, 369 (D.C.Cir.1997). "'[T]he party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law.' " <u>Light v. Wolf</u>, 816 F.2d 746, 751 (D.C.Cir.1987).

SA Yanta received a copy of the Plaintiff's complaint by regular U.S. mail on or about July 31, 2007. However, SA Yanta has not yet been properly served under Rule 4 of the Federal Rules of Civil Procedure. Under Rule 4(i)(1)(B), service on an employee of the government is effected only when the United States is served in the manner prescribed by Rule 4(i)(1) and by serving the employee in the manner prescribed by Rule 4(e), (f) or (g). According to Rule 4(m), a court shall dismiss a complaint without prejudice if service is not made upon a defendant within 120 days after the filing of the complaint.

## V. CONCLUSION

For reasons stated above, Plaintiff's complaint should be dismissed with prejudice against all named defendants.

November 2, 2007                               Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____/s/_____
KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C. 20530
(202) 514-7157
(202) 514-8780 (facsimile)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANTOINE JONES,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| ) | Civil Action No. 07-1172 (RJL) |
| v.   ) | (ECF) |
| ) | |
| **STEPHANIE E. YANTA, et al.** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**ORDER**

UPON CONSIDERATION of Defendants' Motion To Dismiss, the entire record herein, it is hereby

ORDERED that Defendants' motion to dismiss is granted, and it is further

ORDERED that this case is dismissed with prejudice.

_____                    _____
 DATE                              UNITED STATES DISTRICT JUDGE


Copies to:

KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C. 20530

Antoine Jones
DC # 241-912
D.C. Jail
1901 D Street, S.E.
Washington, D.C. 20003